JACQUELINE HARRINGTON GARDNER, ADMINISTRATRIX OF THE ESTATE OF SETH CAMPBELL GARDNER, JACQUELINE HARRINGTON GARDNER, INDIVIDUALLY, PLAINTIFFS v. BENJAMIN A. GARDNER, DEFENDANT

No. 913SC675

(Filed 7 July 1992)

**Damages § 21 (NCI4th); Negligence § 1.1 (NCI3d)— emotional distress—negligent infliction—close proximity not required**

Plaintiff need not be in close proximity to the negligent act in order to recover for negligent infliction of emotional distress, and the foreseeability requirement for such an action was satisfied where plaintiff saw her mortally injured child at the hospital soon after the accident.

**Am Jur 2d, Negligence § 488.**

**Immediacy of observation of injury as affecting right to recover damages for shock or mental anguish from witnessing injury to another. 5 ALR4th 833.**

Judge EAGLES dissenting.

APPEAL by plaintiff from partial summary judgment entered 31 May 1991 in PITT County Superior Court by *Judge W. Russell Duke, Jr.* Heard in the Court of Appeals 11 May 1992.

In her complaint, plaintiff set out two claims for relief: (1) in her capacity as administratrix, for the wrongful death of her minor son, Seth Campbell Gardner; and (2) in her individual capacity, for negligent infliction of emotional distress.

Defendant answered and, *inter alia*, moved to dismiss plaintiff's second claim for failure to state a claim upon which relief can be granted. Discovery ensued, and when defendant's motion to dismiss according to Rule 12(b)(6) of the N.C. Rules of Civil

Procedure came on for hearing, the trial court, having considered matters outside the pleadings, treated defendant's motion as one for summary judgment and dismissed plaintiff's second claim. Pursuant to Rule 54(b) of the N.C. Rules of Civil Procedure, the trial court certified defendant's partial summary judgment for immediate appeal.

The undisputed facts pertinent to plaintiff's second claim are as follows. On 18 August 1990, plaintiff and her thirteen-year-old son, Seth, resided in Greenville, North Carolina. Early that morning, Seth was riding as a passenger in a motor vehicle being driven by defendant, his father, when the truck ran into a bridge abutment on a rural road near Greenville. Upon hearing about the accident and that Seth was being taken to a local hospital, plaintiff went immediately to the hospital emergency room. About five minutes later, a local rescue squad arrived at the hospital and brought Seth into the emergency room. Seth was prone on a stretcher, all but his hands and feet being covered. The rescue personnel were applying resuscitative efforts. Plaintiff waited at the hospital but did not see Seth again until after he died later that day. For purposes of the motion for summary judgment, it was stipulated by the parties that Seth died as a result of the negligence of defendant and that plaintiff suffered severe emotional distress as a result of the accident and death of her son.

*Gaskins & Gaskins, P.A., by Herman E. Gaskins, Jr., for plaintiff-appellant.*

*Baker, Jenkins & Jones, P.A., by Ronald G. Baker and Roswald B. Daly, Jr., for defendant-appellee.*

*Nichols, Caffrey, Hill, Evans & Murrelle, by Richard L. Pinto, for North Carolina Association of Defense Attorneys, amicus curiae.*

WELLS, Judge.

We begin and close our review of this appeal, as we must, by revisiting *Johnson v. Ruark Obstetrics*, 89 N.C. App. 154, 365 S.E.2d 909 (1988), *modified and affirmed*, 327 N.C. 283, 395 S.E.2d 85 (1990).

In *Ruark*, plaintiff mother and father's claim for severe emotional distress were grounded in the events surrounding the death of their full-term child immediately before delivery. The case came to this Court on appeal from the trial court's order allowing defend-

GARDNER v. GARDNER

[106 N.C. App. 635 (1992)]

ant's N.C. Rules of Civil Procedure 12(b)(6) motion for failure to state a claim. After a careful and lengthy analysis of the facts in that case and what we considered to be the applicable law, we reversed, holding that the Johnsons had stated valid claims for severe emotional distress arising out of the negligence of the defendants. Our opinion, of course, speaks for itself.

Our Supreme Court then heard this case on discretionary review and, in a lengthy opinion, reviewed the law of North Carolina on claims for negligent infliction of emotional distress. The Court rejected much of the reasoning of this Court, but for its own reasons as set out in the majority opinion, held that the Johnsons had stated valid claims. There were two dissents from the majority opinion, one of which is of particular significance because it tells us in careful detail what the *Ruark* majority did not do. The elements of the wrong set out in the majority opinion in *Ruark* may be summarized as follows. Any doubt as to whether North Carolina law allows recovery for negligent infliction of purely emotional or mental injury has been put to rest. Neither a physical impact, a physical injury, nor a subsequent physical manifestation of emotional distress is an element of the tort of negligent infliction of emotional distress.

A defendant's negligent act toward one person may proximately and foreseeably cause emotional distress to another person and justify his recovering damages, depending upon their relationship and other factors present in the case.

A plaintiff may recover for severe emotional distress arising from concern for another person if the plaintiff can prove that he or she has suffered such severe emotional distress as a proximate and foreseeable result of the defendant's negligence.

In such cases, the term "severe emotional distress" means any severe and disabling emotional or mental disorder or condition which may be generally recognized and diagnosed by professionals trained to do so.

After clearly setting out the elements of the wrong, the Court provided guidance on the question of foreseeability in such cases. Recognizing that foreseeability is at the threshold of proximate cause, we look to established precedent to further guide us in our resolution of this question. In *Ruark*, the Court restated the foreseeability rule stated in *Azzolino v. Dingfelder*, 315 N.C. 103,

111, 337 S.E.2d 528, 534 (1985). "Under traditional theories of tort law, defendants are liable for all of the reasonably forseeable results of their negligent acts or omissions." 327 N.C. 306.

We find further guidance in the statements of the Court in *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 311 S.E.2d 559 (1984), where the Court, in summary, stated that proximate cause is a cause which produced the plaintiff's injuries, and "one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed." 310 N.C. 233. "[The] test of foreseeability does not require that [a] defendant should have been able to foresee the injury in the precise form in which it actually occurred." 310 N.C. 233, 234.

With these generally well-established principles in mind, we look to the further *guidance* the *Ruark* court provided as to the element of foreseeability in cases of this kind. *Factors to be considered* on the question of foreseeability in such cases include the plaintiff's proximity to the negligent act, whether the plaintiff personally observed the negligent act, and the relationship between the plaintiff and the other person for whose welfare the plaintiff was concerned. (Emphasis supplied.) 327 N.C. 305.

Questions of foreseeability and proximate cause must be determined under all the facts presented and should be resolved on a case-by-case basis. 327 N.C. 305.

The negligence of the defendant and the injury to the plaintiff have been stipulated. The dispositive question before the trial court, and to be resolved by us, is that of foreseeability.

The trial court, in this case, having reviewed the *Ruark* guidelines, adopted a "close proximity" *requirement* for foreseeability, and that is what defendant contends we should affirm. Perhaps the best answer to that argument is to be found in Justice Meyer's lengthy dissent in *Ruark*, where he makes it clear that he was unable to persuade a majority in *Ruark* to adopt a close proximity requirement.

As we perceive the close proximity requirement as it has been adopted and followed in other jurisdictions, *see* Meyer's dissent in *Ruark*, a plaintiff in cases such as the one now before us must have been in such close proximity to the injury-producing event as to experience a sensory perception of the event and its "on

GARDNER v. GARDNER

[106 N.C. App. 635 (1992)]

the scene" manifestation; *i.e.*, be at the scene, or arrive promptly thereafter.

We are of the opinion, and so hold, that the proximity factor established in *Ruark* is not that narrow. In common experience, a parent who sees its mortally injured child soon after an accident, albeit at another place, perceives the danger to the child's life, and experiences those agonizing hours preceding the awful message of death may be at no less risk of suffering a similar degree of emotional distress than that of a parent who is actually exposed to the scene of the accident.

Thus, we hold that the defendant, in this case, could have reasonably foreseen that his negligence might be a direct and proximate cause of the plaintiff's emotional distress.

The relationship factor—parent and child—is, of course, answered in *Ruark* in plaintiff's favor.

For the reasons stated, the judgment of the trial court must be and is

Reversed.

Judge ARNOLD concurs.

Judge EAGLES dissents.

Judge EAGLES dissenting.

I respectfully dissent. The majority opinion here is based on the premise that because the majority in *Ruark* chose not to set out specific limits on foreseeability, we should infer that the Court intended no further limitation. I think this position is flawed. *Ruark* was not a case whose facts raised a question about the limits of the proximity requirement. *Ruark* involved the parent/child relationship and parents who were in close proximity to and *observed* many of the events surrounding the death of the fetus and the stillbirth.

Here, plaintiff did not observe the negligent act of defendant and was not in close proximity to the negligent act. She was in fact several miles away when the accident occurred. Although *Ruark* does not specifically set limits on proximity, nothing in the Supreme

Court's opinion prevents this Court from announcing a limit when facts are presented which raise the question. *Gardner v. Gardner* is such a case. Plaintiff has failed to establish sufficient proximity to satisfy the foreseeability requirements of *Ruark*, and I would affirm the judgment of the trial court.